**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | |
|---|---|
| JERMALL WEST,<br><br>       Plaintiff,<br><br>      v.<br><br>PRINCE GEORGE'S COUNTY,<br>MARYLAND,<br><br>       Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 21-CV-863
JURY TRIAL DEMANDED

**COMPLAINT**

1.      Plaintiff Jermall West was arrested on January 9, 2020. On April 1, 2020, the court with jurisdiction over his case ordered that he be released if he posted a money-bail amount of $5,000. On April 3, 2020, a person acting on West's behalf paid $500 to post a $5,000 bail bond for West's release. That same day, West tested positive for the novel coronavirus, which was then spreading rapidly in the jail. Because West was infected with the novel coronavirus, then–Director of the Prince George's County Department of Corrections, Mary Lou McDonough, decided on her own that West should not be released. This decision was contrary to the court's clear order and without any conceivable legal basis, as even she later admitted. Instead of setting West free, as the law required her to do, McDonough ordered West confined to a filthy cell, for 23 hours per day, for thirteen days. After West was finally released, all the charges against him were dropped. McDonough's decision to jail West without conceivable legal authority violated the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. West brings this action to seek compensation for the harm he suffered as a result.

## Parties

2.      Plaintiff Jermall West is a 35-year-old father of two who has lived in Prince George's County, Maryland, for his entire life.

3.      Defendant Prince George's County, Maryland, is a municipal corporation formed under the laws of Maryland. At all times relevant to this case, Mary Lou McDonough was the Director of the Department of Corrections and held final policymaking authority on the County's behalf with respect to the jail.

1

## Jurisdiction and Venue

4.      West brings this action under 42 U.S.C. § 1983, alleging a violation of his rights under the Fourth and Fourteenth Amendments. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, and venue is proper in this district and division because the acts complained of in this case occurred in this district and division.

## West's Arrest, Detention, and Authorized Release

5.      West was arrested by a Prince George's County Sheriff's Deputy on January 9, 2020, and brought to the Prince George's County jail.

6.      At 6:05 PM that day, West appeared before a District Court Commissioner (an officer who determines pretrial-release conditions).

7.      The Commissioner determined that West was eligible for the services of the Public Defender because he was indigent, and that he could be released if someone paid to secure a $15,000 money-bail amount.

8.      West could not afford that amount, and so he was jailed.

9.      The following day, West appeared before a Prince George's County District Court judge, who determined that West should be detained pending trial because West, according to the Pretrial Services Office of Prince George's County, was on probation at the time of his arrest.

10.      On January 17, 2020, West's attorney filed a motion to modify the conditions of his release, explaining that Pretrial Services was wrong: West was not, in fact, on probation when he was arrested. West's attorney explained that releasing

2

West would pose neither a risk of flight nor a danger to the community, and requested that the court set reasonable conditions to allow West's release into the community.

11.     At a hearing on January 23, 2020, the District Court declined to modify its decision to jail West pretrial, and so he remained incarcerated.

12.     On March 16, 2020, West's attorney filed another motion to modify West's conditions of release. By then, the coronavirus pandemic had begun to spread in the jail. West's attorney argued that this amounted to a change in circumstances justifying West's release. West, the attorney explained, faced a heightened risk of infection, sickness, and death because of serious chronic health issues from which he suffers. The attorney further explained that the close confines of the jail create a severe risk of infection.

13.     On March 19, 2020, at a cursory hearing, conducted without notice to the attorney or West, and at which neither the attorney nor West was present, the District Court again declined to modify its decision to jail West.

14.     On March 20, 2020, West's attorney filed another motion to modify the conditions of West's release. The attorney explained that West was more than willing to comply with any reasonable conditions the court may have been inclined to require, and that he had deep roots in the Prince George's County community.

15.     This time, the District Court agreed in part. By then, the District Court had determined that West was not, in fact, on probation when he was arrested, and so the court dismissed a petition for violation of that probation—which West was not

3

on—and concluded that West could be safely released pending resolution of the charges against him.

16.     On April 1, 2020, the District Court ordered West released if someone secured a $5,000 bond to be forfeited if he failed to appear, and ordered that West have no contact with the complainant in his case and that he not possess any firearms or weapons if released.

17.     The District Court imposed no other conditions on West's release.

18.     At 12:16 PM on April 3, 2020, a person acting on West's behalf paid $500 to the District Court to secure a bond for his release.

19.     The bond imposed no conditions on West's release other than that he personally appear, as required, in any court in which charges against him are pending or to which those charges may be transferred or appealed.

20.     That day, the District Court's docket read "BOND POSTED" and "DEFENDANT RELEASED FROM COMMITMENT."

### McDonough Personally Orders West Illegally Jailed Because He Was Infected with the Coronavirus

21.     On April 3, 2020, West tested positive for SARS-CoV-2, the coronavirus that causes COVID-19.

22.     Then-Director McDonough described what happened next in papers that she filed in response to a different lawsuit in this Court.

23.     Sometime after West tested positive, McDonough called West's mother, with whom he lived, to notify her that West "required quarantine for 14 days."

24.   McDonough claimed that West's mother told her that West "could not come home."

25.   "The Office of the Public Defender," according to McDonough, "attempted to get [West's] brother to take him in, but was unsuccessful."

26.   McDonough took no further efforts to find West a safe place to go.

27.   Instead, McDonough decided to keep him in jail.

28.   While in jail, West was held in lockdown in a small cell for 23 hours per day.

29.   West's cell was very dirty.

30.   On April 14, 2020, West's attorney filed an emergency petition for a writ of habeas corpus in the Circuit Court for Prince George's County, arguing that West was being jailed without any legal basis, and explaining that the attorney had contacted the jail on many occasions to inform jail staff that there was no legal basis for West's detention.

31.   West's attorney explained that jail staff refused to release West despite the lack of legal authority to detain him, and that jail staff refused to provide the attorney with a date certain on which West would be released.

32.   On April 15, 2020, West's attorney emailed the chambers of the Circuit Court judge to whom the emergency habeas petition had been assigned to alert the court that the petition was pending.

33.   The same day, the court's law clerk wrote back that a hearing had been scheduled for April 21, 2020.

## West is Finally Released

34.     On April 16, 2020, West was released from jail.

35.     West had been jailed without legal authority for thirteen days.

36.     Until McDonough filed papers in another case in this Court, no one ever explained to West why he was not released immediately when he secured his release in District Court.

37.     To this day, no one has cited any legal authority for jailing West after he posted a bond as required by the District Court.

38.     On the contrary, McDonough's attorney, acting on her behalf and on the County's behalf, acknowledged in this Court that jailing someone due to their COVID-19 positive status "would present a substantive due process violation."

## McDonough Makes Policy for the County

39.     At all times relevant to this lawsuit, McDonough was Director of the Prince George's County Department of Corrections.

40.     In this capacity, she had final policymaking authority over all jail policy decisions.

41.     McDonough, after personally calling West's family, herself made the decision to jail West after he posted a bond to secure his release.

## The Harm to West

42.     West was illegally jailed for thirteen days, during which time he could not work, see his friends or family, or participate in the ordinary activities of daily life.

43.     Instead, he was confined to a filthy cell for 23 hours per day.

6

44.     All the while, he was sick with COVID-19.

45.     This experience was physically painful for and emotionally distressing to West.

## Claims for Relief

### Count One: Section 1983 Claim for Violation of West's Fourth Amendment Right to be Free from Unreasonable Seizure

46.     West incorporates all prior paragraphs here.

47.     Defendant, Prince George's County, Maryland, acting through its chief policymaker Mary Lou McDonough, jailed West without any legal authority for thirteen days.

48.     This detention was unreasonable and violated the Fourth Amendment to the United States Constitution.

### Count Two: Section 1983 Claim for Violation of West's Substantive Due Process Rights

49.     West incorporates all prior paragraphs here.

50.     Defendant, Prince George's County, Maryland, acting through its chief policymaker, Mary Lou McDonough, jailed West without any legal authority for thirteen days.

51.     McDonough was personally aware of—indeed she personally ordered—West's illegal detention. She was therefore necessarily deliberately indifferent to his constitutional rights.

52.     McDonough's conduct shocks the conscience.

### *Count Three: Section 1983 Claim for Violation of West's Procedural Due Process Rights*

53.     West incorporates all prior paragraphs here.

54.     After the money required by the District Court for West's release was deposited, West was never provided notice of why he was being jailed, an opportunity to be heard on the lawfulness of his jailing, or a decision by an authorized official that his jailing was lawful or justified.

55.     McDonough's conduct deprived West of his fundamental right to bodily liberty and his state-created right to release on satisfaction of release conditions without any pre- or post-deprivation process whatsoever.

### <u>Prayer for Relief</u>

Plaintiff Jermall West respectfully requests:

- An award of compensatory damages;
- An award of reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and
- All other relief that this Court deems just and proper.

Respectfully submitted,

*/s/ Charles Gerstein*
Charles Gerstein
GERSTEIN HARROW LLP
611 Pennsylvania Ave SE, No. 317
Washington, DC 20003
charlie@gerstein-harrow.com
(202) 670-4809

*/s/ Jason Harrow*
Jason Harrow
(*pro hac vice* application forthcoming)
GERSTEIN HARROW LLP
3243B S. La Cienega Blvd.,
Los Angeles, CA 90016

8

(323) 744-5293

*Attorneys for the Plaintiff*