**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | |
|---|---|
| JERMALL WEST, | ) |
| | ) |
|        Plaintiff, | ) |
| | ) |
|    v. | )   Case No. 8:21-CV-863-TDC |
| | ) |
| PRINCE GEORGE'S COUNTY, | ) |
| MARYLAND, | ) |
| | ) |
|       Defendant. | ) |
| | ) |
| | ) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................ii

I.      FACTS.............................................................................................................2

II.     ARGUMENT ..................................................................................................3

        A.     McDonough Made Policy for the County .................................................3

        B.     The County Violated West's Constitutional Rights ...................................5

               1.     Legal Standards in Over-Detention Cases....................................5

               2.     The County Violated West's Rights Under Any Legal Standard...............9

               3.     The County is Estopped to Argue That it Did Not Violate West's
                      Rights.................................................................................12

III.    CONCLUSION ..............................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alexander v. Perrill*, 916 F.2d 1392 (9th Cir. 1990) ................................................................8

*Armstrong v. Squadrito*, 152 F.3d 564 (7th Cir. 1998) .............................................................8

*Arnett v. Kennedy*, 416 U.S. 134 (1974)...................................................................................9

*Barnes v. District of Columbia*, 793 F. Supp. 2d 260 (D.D.C. 2011) ...................................7, 9

*Brendlin v. California*, 551 U.S. 249 (2007).............................................................................6

*Campbell v. Johnson*, 586 F.3d 835 (11th Cir. 2009) ..............................................................15

*County of Riverside v. McLaughlin*, 500 U.S. 44 (1991) ...........................................................6

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998) ...............................................................8

*Davis v. Hall*, 375 F.3d 703 (8th Cir. 2004)............................................................................8

*Dodds v. Richardson*, 614 F.3d 1185 (10th Cir. 2010) ...........................................................15

*Dotson v. Chester*, 937 F.2d 920 (4th Cir. 1991) ......................................................................4

*Douthit v. Jones*, 619 F.2d 527 (5th Cir. 1980) ........................................................................8

*Foucha v. Louisiana*, 504 U.S. 71 (1992) ................................................................................8

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167 (2000).................13

*Golson v. Dep't of Corrections*, 914 F.2d 1491, 1990 WL 141470 (4th Cir. Oct. 2, 1990)
     (unpublished table decision)................................................................................................8

*Greensboro Pro. Fire Fighters Ass'n 3157 v. City of Greensboro*, 64 F.3d 962 (4th Cir. 1995)...4

*Harford County v. Univ. of Maryland Med. Sys. Corp.*, 569 A.2d 649 (Md. 1990) ......................4

*Hawkins v. Freeman*, 195 F.3d 732 (4th Cir. 1999)...................................................................8

*John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26 (4th Cir. 1995)................................12

*Kentucky v. Graham*, 473 U.S. 159 (1985) .............................................................................13

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) ..........................................................8

*Lowery v. Stovall*, 92 F.3d 219 (4th Cir.1996) .......................................................................12

*Lynch v. City of New York*, 335 F. Supp. 3d 645 (S.D.N.Y. 2018) ........................................7, 15

*Manuel v. City of Joliet*, 137 S. Ct. 911 (2017)......................................................................6, 7

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ..........................................................................9, 10

*Mitchell v. W.T. Grant Co.*, 416 U.S. 600 (1974) .....................................................................9

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) ....................................4

*Morales v. Chadbourne*, 793 F.3d 208 (1st Cir. 2015) .........................................................7, 10

*Oviatt v. Pearce*, 954 F.2d 1470 (9th Cir. 1992).......................................................................8

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) ..............................................................3, 4

*Penley v. McDowell County Bd. of Educ.*, 876 F.3d 646 (4th Cir. 2017) ........................................3

*Perkins v. Peyton*, 369 F.2d 590 (4th Cir. 1966) ...........................................................................8

*Robles v. Prince George's County*, 302 F.3d 262 (4th Cir. 2002)...............................................6, 7

*Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989)...........................................................................8

*Seth v. McDonough*, 461 F. Supp. 3d 242 (D. Md. 2020)...................................................13, 14, 15

*State v. Dett*, 891 A.2d 1113 (Md. 2006) ....................................................................................4

*Steele v. Cicchi*, 855 F.3d 494 (3d Cir. 2017) ...........................................................................15

*Tenneco Chems., Inc. v. William T. Burnett & Co.*, 691 F.2d 658 (4th Cir.1982) .......................12

*Young v. City of Mount Ranier*, 238 F.3d 567 (4th Cir. 2001)................................................9, 10

*Zinkand v. Brown*, 478 F.3d 634 (4th Cir. 2007) .......................................................................12

**Statutes**

42 U.S.C. § 1983 .........................................................................................................................3

Md. Code Ann., Health-Gen. § 18-905 .......................................................................................10

**Other Authorities**

CDC, "Interim Guidance on Management of COVID-19 in Correctional and Detention
  Facilities" (March 23, 2020), *available at* https://perma.cc/8Y6R-9CME ..............................11

**Rules**

Fed. R. Civ. P. 56(a) ....................................................................................................................3

**Treatises**

Charles Alan Wright, et al., *Preclusion of Inconsistent Positions—Judicial Estoppel*, 18B Fed.
  Prac. & Proc. Jurisdiction § 4477 (2d ed. 2020) ....................................................................12

**Constitutional Provisions**

U.S. CONST. amend. IV ...............................................................................................................6

The material facts of this case are undisputed: Plaintiff Jermall West was arrested and brought to the Prince George's County jail, where he was confined pretrial. Several months later, while West was in isolation pending test results for Sars-CoV-2, the coronavirus that causes COVID-19, a judge ordered that he be released from custody if someone secured a $5,000 bond for his release. Just before test results came back showing that West was indeed infected with Sars-CoV-2, someone acting on West's behalf paid the money required for his release. But West was not released. Instead, then–Director of the Prince George's County Department of Corrections, Mary Lou McDonough, called West's mother, who said that West could not come home because elderly relatives with health issues lived there. McDonough also heard from the Public Defender's Office that West's brother could not take him in for the same reason. McDonough did nothing else to find West a safe and comfortable place to go: She did not rent a hotel room for West, she did not send West to a hospital, and she did not seek guidance from a court or from the Department of Health. Instead, McDonough decided, all on her own, without any purported (let alone actual) legal authority, to lock West in an isolation cell for two weeks.

Much of the law governing liability in this case is undisputed too, and all of it should be. *First,* it is undisputed that McDonough is the chief policymaker for Defendant Prince George's County on jail-policy issues; thus, the County is legally responsible for her decision to illegally jail West. *Second*, the Constitution does not allow a jailer to lock someone away without any legal authority simply because the jailer's half-hearted efforts to find somewhere else for the person to go fail. Indeed, the County itself conceded this in another proceeding last year, and it may now be estopped from arguing otherwise. In particular, in an effort to persuade another judge of this Court not to issue an injunction against an ostensible policy of jailing people who test positive for Sars-CoV-2, the County evidently stated its belief that jailing people because they test positive for Sars-

1

CoV-2 *violates* the Constitution. In light of the undisputed material facts and the (mostly) undisputed law, West respectfully moves this Court for a partial summary judgment that the County is liable for violating his Constitutional rights.

## I.    FACTS

On January 9, 2020, Plaintiff Jermall West was arrested by a Prince George's County Sheriff's Deputy and brought to the Prince George's County jail. (Joint Statement of Undisputed Facts ¶ 3.[1]) The next day, West appeared before a Prince George's County District Court judge, who decided that West should be detained pending trial. ¶ 4. On March 20, 2020, West's attorney filed a motion to modify the conditions of West's release. ¶ 5. While that motion was pending, on March 28, 2020, West reported symptoms consistent with COVID-19, ¶ 6, which was then beginning to spread widely in the jail and the community at large. Two days later, while in isolation in the jail, West was tested for Sars-CoV-2, the virus that causes COVID-19. ¶ 7.

On April 1, 2020, while the test was outstanding, and while West was in isolation having reported symptoms of COVID-19, the district court granted West's motion in part and ordered West released if someone secured a $5,000 bond (which would require a $500 payment to the court) for his release. ¶ 8. The district court imposed no conditions on West's release other than that he have no contact with the complainant in his pending case and that he not possess any firearms or weapons. *Id.* On April 3, 2020, a person acting on West's behalf paid $500 to the district court to secure a bond for West's release. ¶ 10. At that moment, West had satisfied all of the court-ordered conditions for his release and, under state law and the federal Constitution, West was entitled to immediate freedom. McDonough knew that West had satisfied all the conditions imposed on his release. ¶ 21.

---

[1] All citations are to the Joint Statement of Undisputed Material Facts unless specified otherwise.

On April 4, 2020, a positive test result came back showing that West was indeed infected with Sars-CoV-2. ¶ 16. He was still in jail. *Id.* At this point, McDonough, who had final policymaking authority over the jail, ¶ 25, decided to take matters into her own hands. Sometime after West tested positive, McDonough called West's mother, with whom he lived, to notify her that West "required quarantine for 14 days." ¶ 17. West's mother told McDonough that West "could not come home." ¶ 18. McDonough spoke to someone at the Office of the Public Defender who reported that the office attempted to get West's brother to take him in but was unsuccessful. ¶ 19. McDonough took no further efforts to find West a safe place to go. ¶ 20. Instead, after two phone calls failed to secure a satisfactory place for West to go, McDonough locked him in an isolation cell for 13 days. ¶ 22.

## II.   ARGUMENT

West brings this Action against the County under 42 U.S.C. § 1983, alleging violations of his Fourth Amendment and Due Process rights, and seeks partial summary judgment on the issue of liability. To prove a case under § 1983 against a County, a plaintiff must show that county policy was the moving force behind a violation of the plaintiff's Constitutional rights. *Penley v. McDowell County Bd. of Educ.*, 876 F.3d 646, 653 (4th Cir. 2017) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)). To get a summary judgment, the movant must show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Because the material facts are undisputed, West is entitled to judgment as a matter of law if he shows that (a) McDonough made policy for the County when she decided to jail West and (b) that decision violated West's Constitutional rights.

### A.   McDonough Made Policy for the County

Because McDonough is vested under Maryland state law with final policymaking authority over the jail, the County is responsible for her decision to jail West. Under § 1983, municipalities

are not automatically liable for the actions of their employees. Instead, they are responsible only for actions that constitute "official policy." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). In *Pembaur v. City of Cincinnati*, the Court held that "[i]t is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." 475 U.S. 469, 480 (1986). Those appropriate circumstances, the Court explained, obtain whenever a policymaker *herself* makes a challenged decision: "[W]here action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." *Id.* "Whether an official had final policymaking authority is a question of state law." *Id.* at 483; *see also Dotson v. Chester*, 937 F.2d 920, 924 (4th Cir. 1991).

The County does not dispute that the Director has authority to make municipal policy regarding detention in the jail, ¶ 21, and, under Maryland law, she has such authority. *Compare, e.g.*, *State v. Dett*, 891 A.2d 1113, 1120 (Md. 2006) (analogizing the "the statutory duty of managing officials of local correctional facilities . . . to the common law duty of sheriffs, when acting as jailors"), *with Harford County v. Univ. of Maryland Med. Sys. Corp.*, 569 A.2d 649, 651 (Md. 1990) (explaining codification of common-law duty of sheriff as jailer). And the County does not dispute that McDonough herself made the decision to jail West. ¶ 18. The County is, therefore, liable for the harm that results.[2]

---

[2] The County, apparently failing to recognize that *Pembaur* controls here, argued in an unauthorized motion to dismiss that West has not stated a claim under *Monell* because he alleges only one constitutional violation, and "a single instance . . . cannot, by definition, equate to the 'widespread and permanent' practice necessary to demonstrate a custom attributable to the County." (Doc. 10-1 at 9) (quoting *Greensboro Pro. Fire Fighters Ass'n 3157 v. City of Greensboro*, 64 F.3d 962 (4th Cir. 1995)). The County is wrong; that aspect of *Greensboro* does not apply here. Rather, in *Greensboro*, the Fourth Circuit held that municipal liability cannot be established by the isolated decisions of a person who *lacks* policymaking authority under state law. 64 F.3d at 965. But the evidence in this case shows that a person with state-law-granted

## B.      The County Violated West's Constitutional Rights

The County jailed West without any legal authority for almost two weeks. That violates the Constitution. Although there is some uncertainty in the law regarding which of West's Constitutional rights were violated and exactly what legal standards govern, there is no non-frivolous argument that a jailer may constitutionally hold someone in custody without any legal authorization to do so. Regardless, the County should not be heard to offer any such argument because it convinced Judge Xinis not to enjoin it from implementing a policy of jailing people because they have COVID-19 by arguing that such a policy is, in fact, unconstitutional. The County violated West's Constitutional rights.

### 1.      *Legal Standards in Over-Detention Cases*

Three lines of constitutional doctrine are potentially implicated when a jailer holds a pretrial detainee beyond the expiration of the jailer's authority to do so: the Fourth Amendment's prohibition on unreasonable seizures without a judicial determination probable cause, the Due Process Clause's substantive prohibition on conduct that violates a person's fundamental rights, and the Due Process Clause's procedural restriction on deprivations of liberty without adequate procedural protections. Although the Fourth Circuit has not explicitly prescribed a doctrinal standard for cases like West's, substantive due process likely governs under Fourth Circuit law.

---

policymaking authority made the relevant decision. ¶ 25. And *Greensboro* itself says that a municipality can be liable for the acts of its authorized policymakers. 64 F.3d at 965 ("If [the alleged policymaker] was authorized, pursuant to state law, to establish the municipality's policy with regard to [the challenged act], it could follow that the municipality would bear responsibility for that policy."). The County *repeated* this argument in a pre-motion letter *after* West explained the relationship between *Greensboro* and *Pembaur* in his letter noticing this motion. (*Compare* Doc. 14 at 1–2, *with* Doc. 16 at 2–3.) A third attempt by the County to make the same argument without somehow distinguishing *Pembauer* (it is indistinguishable), explaining why it does not apply (it does), or is not good law (it is) would be sanctionable under Federal Rule of Civil Procedure 11.

a.        The Fourth Amendment

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures." U.S. CONST.  amend. IV. "A person is seized," the Supreme Court has explained, whenever officials "restrain[] his freedom of movement" such that he is "not free to leave." *Brendlin v. California*, 551 U.S. 249, 254 (2007). Seizures that continue for an unreasonably long time without a judicial determination that probable cause exists to justify them are, under Supreme Court doctrine, "unreasonable." *E.g.*, *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991). When West was ordered released by a judge but was instead jailed, he was "seized . . .unreasonabl[y]." West's claim, then, "fits the Fourth Amendment, and the Fourth Amendment fits [West]'s claim, as hand in glove." *Manuel v. City of Joliet*, 137 S. Ct. 911, 917 (2017).

Some Fourth Circuit precedent, though, complicates this clear picture. In *Robles v. Prince George's County*, the court considered a claim against two Prince George's County officers who, in an effort to get reluctant Montgomery County officers to take custody of a person with an outstanding warrant, handcuffed him to a lamppost in an empty parking lot and abandoned him there. 302 F.3d 262, 268 (4th Cir. 2002). The court concluded that the Fourth Amendment did not govern this claim because the plaintiff had initially been lawfully arrested on a valid warrant, and "[o]nce the single act of detaining an individual has been accomplished, the Amendment ceases to apply." *Id.* The plaintiff's "status at the time of this incident was that of a pretrial detainee, and the Fourth Amendment does not extend to such situations." *Id.* Instead, the Due Process Clause governs. *Id.*

Subsequent Supreme Court precedent undercuts *Robles*. In *Manuel*, the Court explained, relying on *McLaughlin*, that "the Fourth Amendment provides the appropriate lens through which to view a claim involving pretrial detention." 137 S. Ct. at 917 & n.5. A "seizure," the Court held,

6

can continue after—indeed months after—the onset of "legal process," whether that be an initial appearance or even an indictment. *Id.* at 917–19 & n.8. The Fourth Circuit's rationale in *Robles*— that the Fourth Amendment does not apply once a person is "seized" the first time—cannot stand in light of *Manuel*. *See also Robles v. Prince George's County*, 308 F.3d 437, 447 (4th Cir. 2002) (Luttig, J., dissenting from denial of rehearing en banc) ("When, as here, officers decide to cease to secure an arrestee's presence at trial . . . , any further restriction of the individual's liberty constitutes a new seizure, as such restriction can no longer be legally based on the prior seizure."); *Morales v. Chadbourne*, 793 F.3d 208, 217 (1st Cir. 2015) ("Because [the plaintiff] was kept in custody for a new purpose after she was entitled to release, she was subjected to a new seizure for Fourth Amendment purposes—one that must be supported by a new probable cause justification.").

The Fourth Circuit has not yet considered *Manuel*'s application to cases otherwise governed by *Robles*'s reasoning. Although *Manuel* clearly undercuts *Robles*, this Court—as explained below—need not consider *Robles*'s continuing vitality because West's claim succeeds under due process standards as well.

### b.    Substantive Due Process

Many courts have considered cases of "overdetention" under the Due Process Clause. *See, e.g.*, *Barnes v. District of Columbia*, 793 F. Supp. 2d 260, 275 (D.D.C. 2011) (collecting cases and explaining legal standards); *see also Lynch v. City of New York*, 335 F. Supp. 3d 645, 653 (S.D.N.Y. 2018). Overdetention occurs, the courts have explained, when people who were initially jailed lawfully—whether that be pursuant to a warrant, a judicial determination of probable cause, or a judgment of conviction—are held beyond the expiration of the legal authority to jail them. *Id.* This jailing implicates their fundamental liberty interests, and, therefore, may violate the rule of substantive due process. *Id.* ("Even if an inmate's initial confinement was justified by a

constitutionally adequate basis, that confinement cannot constitutionally continue once that basis no longer exists." (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992))); *see also Davis v. Hall*, 375 F.3d 703, 714 (8th Cir. 2004) ("[Plaintiff] has alleged that the defendants deprived him of a protected liberty interest by continuing to confine him after he completed his sentence and was ordered immediately released. Other circuits have recognized this right." (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 683 (9th Cir. 2001) (quoting *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992)); *Armstrong v. Squadrito*, 152 F.3d 564, 576 (7th Cir. 1998); *Alexander v. Perrill*, 916 F.2d 1392, 1398 (9th Cir. 1990); *Golson v. Dep't of Corrections*, 914 F.2d 1491, 1990 WL 141470, *1 (4th Cir. Oct. 2, 1990) (unpublished table decision); *Douthit v. Jones*, 619 F.2d 527, 532 (5th Cir. 1980); *Moore v. Tartler*, 986 F.2d 682, 686 (3d Cir. 1993); *Sample v. Diecks*, 885 F.2d 1099, 1108 (3d Cir. 1989)).

Although the Fourth Circuit has not explicitly determined the legal standard governing overdetention claims, it has analyzed such claims under the Due Process Clause. *See, e.g.*, *Perkins v. Peyton*, 369 F.2d 590, 592 (4th Cir. 1966) ("[A] state prisoner clearly has a Fourteenth Amendment right to be released from service of a sentence upon expiration of its unequivocal term."). Under the substantive Due Process standard, overdetention is unconstitutional when it is undertaken with "deliberate indifference." *Compare Hawkins v. Freeman*, 195 F.3d 732, 738 (4th Cir. 1999) (holding that an infringement of an individual's substantive due process rights violates the Fourteenth Amendment when it is "'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience'" (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)), *with Lewis*, 523 U.S. at 851–52 (explaining that in a "custodial situation," "deliberate indifference" can satisfy the substantive-due-process standard). To show "deliberate indifference,"

8

a plaintiff must prove that "defendants actually knew of and disregarded a substantial risk of serious injury to the detainee." *Young v. City of Mount Ranier*, 238 F.3d 567, 576 (4th Cir. 2001).

### c.     Procedural Due Process

Finally, cases of illegal detention can violate the procedural component of the Due Process Clause. "Under procedural due process, the government is required to provide individuals with certain procedural rights before it may deprive them of life, liberty, or property." *Barnes*, 793 F. Supp. 2d at 275 n.11 (citing *Mathews v. Eldridge*, 424 U.S. 319, 332–33 (1976)). In *Barnes*, the court explained that substantive due process is the more appropriate standard to apply where a jailer neglected to implement reasonable procedures for timely release. *Id.* But it is not clear whether that standard also applies to cases, like this one, where a jailer—in disregard of all conceivable sources of legal regulation—simply jails a person intentionally and in knowing violation of a state-court order of release. In cases like this, the jailer can be said to have failed to seek authorization for her actions and, therefore, to have violated the procedural component of the Due Process Clause, which requires notice and a hearing *before* effecting a deprivation of *physical* liberty. *See, e.g.*, *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 624 (1974) (citing *Arnett v. Kennedy*, 416 U.S. 134, 164 (1974)).

### 2.     *The County Violated West's Rights Under Any Legal Standard*

Start with a simple, and uncontroversial, proposition: The United States Constitution does not allow the government to jail someone, in the face of a court order that he be released, without a speck of judicial or legal authorization. The County did just that. And so its decision to jail West for thirteen days violated any conceivable legal standard. As explained above, substantive due process is likely the applicable standard, and West pleads all three legal theories only to preserve his rights in case this Court disagrees. Nonetheless, the Court need not determine which line of doctrine applies because its judgment would be the same regardless: The County is liable to West.

If the Fourth Amendment applies, the County's actions are unconstitutional. To jail someone consistently with the Fourth Amendment, jailers must seek and receive timely judicial authorization, and when that authorization expires, they must release their prisoners forthwith. *See, e.g.*, *Morales*, 793 F.3d at 217. Here, West was entitled to release, and yet the County did not release him. Instead, without any judicial authorization, it jailed him for 13 days. That is unconstitutional.

If the substantive component of the Due Process Clause applies, the County's actions are unconstitutional. Under substantive due process, jailers violate prisoners' rights when the jailers "kn[ow] of and disregard[] a substantial risk of . . ." illegally jailing them. *Young*, 238 F.3d at 576. Here, McDonough *knew* West was *in fact* entitled to release and *still* decided to jail him. ¶¶ 21–22 ("McDonough was aware that West had satisfied the conditions the court imposed on his release. McDonough decided to keep him in medical isolation in the jail, and West was in fact kept in isolation in the jail until released." (paragraph break omitted)). This is deliberate indifference *a fortiori*, and it shocks the conscience to boot: McDonough acted without any legal basis and in total disregard of West's fundamental rights. This is unconstitutional.

And if the procedural component of the Due Process Clause applies, the County's actions are unconstitutional. Under procedural due process, courts balance "(1) the private interest affected by the official action; (2) the risk that the plaintiff will suffer an erroneous deprivation through the procedure used and the probable value if any of additional procedural safeguards; and (3) the government's interest." *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976). Here, state law provides a swift and speedy way to ensure safe and comfortable quarantine for potentially infectious individuals consistent with their constitutional rights. *E.g.*, Md. Code Ann., Health-Gen. § 18-905 ("[The Secretary] [m]ay issue an order requiring individuals whom the Secretary has

reason to believe have been exposed to a deadly agent to seek appropriate and necessary evaluation and treatment."); *id.* § 18-906 (explaining the detailed notice and hearing requirements for the issuance of such an order). Under Maryland law, West could have been confined in a comfortable place, like a hotel or hospital. McDonough ignored that law, and instead took matters into her own hands—or, at least, she did so for a few minutes before confining West to isolation in her jail for nearly two weeks, and after that following up not at all. She violated a private interest of the highest order (physical liberty), with a procedure that ignored state law and carried something close to a 100% chance of resulting in an erroneous deprivation of liberty, and she did so without considering other means of protecting the government's legitimate interest in ensuring that communicable diseases are controlled. This is unconstitutional.

The County may argue that the confinement was justified in light of CDC guidance about best practices for jails that had been recently issued. That would be a non sequitur. There is no argument that the CDC's Guidelines for Correctional Facilities somehow provide legal authority for a Maryland jailer to confine someone who has an unambiguous right to be released from jail.[3] West, of course, does not argue that McDonough confined him for sadistic reasons (although the scant attention and meager effort she gave to this matter suggests that she was not overly concerned with West's liberty). But an explanation is not the same thing as a justification. Here, not only is there no legal justification for jailing West, it is undisputed that McDonough *knew* West had

---

[3] The County, not surprisingly, violated even the non-binding CDC Guidelines. The CDC recommends restricting people with COVID-19 from leaving the facility "*unless released from custody.*" CDC, "Interim Guidance on Management of COVID-19 in Correctional and Detention Facilities" (March 23, 2020), at 17, *available at* https://perma.cc/8Y6R-9CME (emphasis added). And, recognizing that detainees leave or enter correctional facilities frequently, the guidance repeatedly provides best practices for transfers to other facilities, and also suggests that correctional personnel be in touch with, among others, local health departments. *Id.* at 15, 17. Nowhere do the Guidelines suggest that jailers detain people who test positive for COVID-19 even after they are ordered released by courts.

satisfied all of his court-imposed conditions, ¶ 21, and thus that he was legally entitled to be released. She simply did not comply. That is unconstitutional by any measure.

>    3.    *The County is Estopped to Argue That it Did Not Violate West's Rights*

Finally, even if there were any doubt as an initial matter that the County violated West's rights (and there is not), the County likely should not be heard to argue that it did not violate West's rights because it has successfully argued the exact opposite before another judge of this Court.

"Inconsistent positions in successive litigation are regulated by rules that increasingly are referred to as 'judicial estoppel.'" *See* Charles Alan Wright, et al., *Preclusion of Inconsistent Positions—Judicial Estoppel*, 18B Fed. Prac. & Proc. Jurisdiction § 4477 (2d ed. 2020). Courts sometimes use other terminology, *id.*, but the relevant inquiry here centers on two key elements: whether a party took a position in one piece of litigation that is clearly inconsistent with a position it has taken in another piece of litigation, and whether some articulable unfairness—to the parties, to the courts, or to the notion of fairness itself—would result if the inconsistency were permitted. *Id.* All approaches to judicial estoppel are flexible, and they all rely on the court's equitable and discretionary judgment. *Id.* at §§ 4477.1–5. In the Fourth Circuit,

> Three elements must be satisfied before judicial estoppel will be applied. First, the party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation. The position at issue must be one of fact as opposed to one of law or legal theory. Second, the prior inconsistent position must have been accepted by the court. Lastly, the party against whom judicial estoppel is to be applied must have intentionally misled the court to gain unfair advantage. This bad faith requirement is the determinative factor.

*Zinkand v. Brown*, 478 F.3d 634, 638 (4th Cir. 2007) (citing *Lowery v. Stovall*, 92 F.3d 219, 224 (4th Cir.1996); *Tenneco Chems., Inc. v. William T. Burnett & Co.*, 691 F.2d 658, 665 (4th Cir.1982); *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 28 (4th Cir. 1995) (quotations

omitted)). That doctrine should estop the County from arguing here that what it did to West was constitutionally permissible.

In *Seth v. McDonough*, a class of people confined in the Prince George's County jail sued McDonough, "in her official capacity as Director of the Prince George's County Department of Corrections"—which, for this purpose, meant that the County was defendant, *see Kentucky v. Graham*, 473 U.S. 159, 165 (1985)—for equitable relief to protect them against the dangers of COVID-19 in the jail. 461 F. Supp. 3d 242 (D. Md. 2020). The case was heard by Judge Xinis. Among other things, the plaintiffs in *Seth* sought "injunctive relief for a subclass of detainees whom Plaintiffs contend are currently held without any lawful authority due to their COVID-19 positive status." *Id.* at 265. In response, the County argued "that the claim is moot because no COVID-19-positive detainee is currently held in violation of a state-court release order." *Id.* (citing ECF No. 29 at 12). The County admitted, as it does now, that it had jailed one person after he had a right to release under state law—that person was West—but contended that the case for injunctive relief was moot because he had already been released.[4] The County, therefore, needed to "make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000). To do that, the County, Judge Xinis explained in her opinion, "acknowledged at the hearing [in *Seth*] that any such case [of a detainee being held in violation of a state-court release order] would

---

[4] *Seth* cited the County's argument in ECF No. 29 at page 12, which reads: "There was one inmate who paid his lowered bond, but release was postponed due to a positive for COVID-19 test. Director McDonough contacted the inmate's family to notify them that he required quarantine for 14 days. His family instructed Ms. McDonough that he could not come home. The Office of the Public Defender attempted to get the inmate's brother to take him in, but was unsuccessful. During this time of attempting to release him without exposing the public, the inmate completed the 14 day quarantine with no symptoms and was released. Other than this one incident that is now moot, there are no other inmates being held after obtaining an Order for release on Pre-Trial release or home detention."

present a substantive due process violation." *Seth*, 461 F. Supp. 3d at 265. And Judge Xinis evidently agreed, concluding—in the face of an admission by the County that it had illegally jailed at least one person—that "the record does not support a policy of detaining COVID-19 positive detainees in contravention to a state-court release order." *Id.*

   In this case, the County is taking precisely the opposite position: According to its letter noticing a motion to dismiss or for summary judgment, the County now believes that "it is clear the over-detention of West was based upon a legitimate non-punitive governmental objective . . ." and, therefore, that "[e]ven viewing the asserted facts in the Complaint as true, . . . Count I fail[s] to state a claim upon which relief may be granted . . . ." (Doc. 16 at 3.) In *Seth*, the County evidently argued that it could not, as a factual matter, be expected to jail people who have COVID-19 *because doing so is illegal*. Here, the County argues that it should not be liable to a person it jailed because he had COVID-19 because doing so is *not* illegal.

   This meets the two objective prongs of the Fourth Circuit's test for judicial estoppel, and it likely meets the more subjective "unfair advantage" prong as well. First, the positions in the two cases are manifestly inconsistent, and, although the County's first position was surely undergirded by a legal argument, the County's position before Judge Xinis was a *factual* one: The County was arguing as a matter of fact that it could not be expected to return to jailing people because they have COVID-19 by arguing that doing so would be illegal. Second, although the *Seth* court also relied on the comparatively small number of instances of documented overdetention, the County evidently persuaded the first tribunal to accept its argument, and indeed Judge Xinis explicitly relied on the County's concession in concluding that injunctive relief was unwarranted. *Seth*, 461 F. Supp. 3d at 265 ("Defendant responds that the claim is moot because no COVID-19-positive detainee is currently held in violation of a state-court release order, . . ., and further acknowledged

14

at the hearing that any such case would present a substantive due process violation." (citing *Steele v. Cicchi*, 855 F.3d 494, 502 (3d Cir. 2017); *Lynch v. City of New York*, 335 F. Supp. 3d 645, 654 (S.D.N.Y. 2018); *Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009); *Dodds v. Richardson*, 614 F.3d 1185, 1193 (10th Cir. 2010), *cert. denied*, 563 U.S. 960 (2011)).

The last element of the test is, of course, the most difficult: whether this switch was intentional and done to gain an "unfair advantage." West does not lightly allege intentional, subjective bad faith, and does not do so now. Perhaps the County can, in response to this motion, offer a good-faith explanation of why its two positions differ, in which case West will withdraw his argument for judicial estoppel on reply. But as the record stands now, the County appears to have taken two inconsistent positions, and there is no readily apparent reason why it would do so except to gain in this litigation the advantage of avoiding liability while preserving in *Seth* its argument that the request for injunctive relief is moot. Indeed, given the County's prior position on this very issue, West questions why the County is vigorously contesting liability (including by filing a motion to dismiss or for summary judgment that was unauthorized by the court's rules), and thus forcing him to wait many months for relief in this case in the first place.

The parties surely may reasonably disagree on the question of damages, and so West cannot—and does not—fault the County for refusing simply to concede the case or to engage in settlement discussions. But West cannot now understand how the County could, in good faith, contend that its actions here were lawful, let alone how it could do so in the face of its prior "acknowledge[ment]" that those same actions were unlawful. *Id.* Without knowing more, the County appears to be slowing this case down without good reason, which is alone troubling. If true, it would violate, among other rules and statutes, Federal Rule of Civil Procedure 11, which prohibits attorneys from filing papers that cause "unnecessary delay" or "needlessly increase the

cost of litigation." To be very clear: West has not yet served a Rule 11 motion, and has not filed a pre-motion letter to notice one. Before doing so, and before arguing that the County's switch in position was done to gain "unfair advantage" under the estoppel standard, West invites the County to offer an explanation for why its position has changed. But the fact that the County has changed its position with respect to the legality of West's overdetention is beyond dispute.

## III.     CONCLUSION

For the foregoing reasons, Plaintiff Jermall West respectfully requests that this Court enter a partial summary judgment that the County is liable to West. West reserves the question of damages for trial before a jury.

Respectfully submitted,

*/s/ Charles Gerstein*
Charles Gerstein
GERSTEIN HARROW LLP
611 Pennsylvania Ave SE, No. 317
Washington, DC 20003
charlie@gerstein-harrow.com
(202) 670-4809

*/s/ Jason Harrow*
Jason Harrow
GERSTEIN HARROW LLP
3243B S. La Cienega Blvd.,
Los Angeles, CA 90016
jason@gerstein-harrow.com
(323) 744-5293