**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

|  |  |
|---|---|
| JERMALL WEST, | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) Case No. 8:21-CV-863-TDC ) |
| PRINCE GEORGE'S COUNTY, MARYLAND, | ) ) ) |
| Defendant. | ) ) ) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

I. ARGUMENT ..................................................................................................................1

    A. The County is Responsible for its Policymaker's Decision. ...................................2

    B. The County Violated West's Rights. .......................................................................4

        1. The Special-Needs Exception Does Not Apply to Indefinite Detentions. ..............................................................................................................5

        2. The County Applies the Wrong Substantive-Due-Process Standard ..........6

        3. The County Applies the Wrong Procedural-Due-Process Standard............8

        4. Interim CDC Guidance For Jails Did Not Provide Legal Authority To Overdetain West. ......................................................................................9

    C. The County is Estopped to Argue That it Did Not Violate West's Rights............10

II. CONCLUSION .............................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Addington v. Texas*, 441 U.S. 418 (1979) ............................................................................................9

*Bell v. Wolfish*, 441 U.S. 520 (1979) ...................................................................................................7

*County of Riverside v. McLaughlin*, 500 U.S. 44 (1991) ...................................................................6

*Mays v. Dart*, 974 F.3d 810 (7th Cir. 2020) .......................................................................................9

*McMillian v. Monroe County,* 520 U.S. 781 (1997) ..........................................................................4

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) .................................2, 4

*Monroe v. Pape*, 365 U.S. 167 (1961) .................................................................................................3

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) ........................................................................2

*Seth v. McDonough*, 461 F. Supp. 3d 242 (D. Md. 2020) ..............................................................10

*Shadwick v. City of Tampa*, 407 U.S. 345 (1972) .............................................................................5

*United States v. Brignoni-Ponce*, 422 U.S. 873 (1975) ...................................................................6

*Williams v. Anderson*, 753 F. Supp. 1306 (D. Md. 1990) ...............................................................4

*Williamson v. Stirling*, 912 F.3d 154 (4th Cir. 2018) ......................................................................8

**Statutes**

42 U.S.C.A. § 1997e ..............................................................................................................................7

Md. Code Ann., Health-Gen. §§ 18-905, 906 ....................................................................................9

**Other Authorities**

Eve Brensike Primus, *Disentangling Administrative Searches*, 111 COLUM. L. REV. 254 (2011) . 6

*Seth v. McDonough*, No. 8:20-cv-01028-PX, Doc. 128-1 (Motion to Dismiss Brief) (D. Md. July 17, 2020) ...........................................................................................................................................7

*Seth v. McDonough*, No. 8:20-cv-01028-PX, Doc. 96 (Hearing Transcript) (D. Md. May 20, 2020) .............................................................................................................................................11

**Rules**

Fed. R. Civ. P. 56(a) ............................................................................................................................1

**Constitutional Provisions**

U.S. Const. amend. IV ...........................................................................................................5

Defendant Prince George's County, Maryland, acknowledges that Mary Lou McDonough, a person who it admits "had final policymaking authority over all jail policy decisions" (Doc. 18-2 at ¶ 25), personally decided to jail Plaintiff Jermall West in violation of a state-court order that he be released (Doc. 18-2 at ¶ 22). The County admitted in a previous case that jailing people in violation of state-court orders violates the Constitution, and of course it does. *See infra* § I.C. As Plaintiff Jermall West explained in his opening brief, that should be the end of the matter. The County is liable for violating West's constitutional rights, and he should be awarded damages in an amount set by a jury.

In the face of the straightforward conclusion that the County violated West's constitutional rights, the County contradicts its own stipulations; offers three legal standards that do not apply here; and fails to acknowledge, let alone explain, its own prior representations to another judge of this Court. The County's contentions in support of its motion for summary judgment and in opposition to West's fail.

I.     **ARGUMENT**

Because the material facts of this case are undisputed (Doc. 18-2), the only question before this Court is which party prevails as a matter of law, Fed. R. Civ. P. 56(a). The County offers two principal arguments in support of the conclusion that it should prevail as a matter of law: *First*, that the County is not responsible for McDonough's decision because she made that decision only once, and because she did so in violation of a court order, such that the court is ultimately responsible (Doc. 19-1 at 8–10); and *second*, that McDonough's decision did not violate West's Constitutional rights because (i) the "special needs" exception to the Fourth Amendment permits warrantless detentions of Americans for weeks at a time, (ii) substantive due process forbids jailing people without legal authority to do so—and knowingly without legal authority to do so—only when that jailing amounts to punishment, and (iii) procedural due process allows jailers to keep

1

people in jail without a hearing so long as there is no "disciplinary" action afoot (Doc. 19-1 at 11–22). These contentions fail. Finally, the County is estopped to argue otherwise because it made precisely the opposite argument before Judge Xinis and has not explained the discrepancy, instead simply denying it in the face of judicial statements to the contrary. West prevails as a matter of law.

      **A.**      **The County is Responsible for its Policymaker's Decision.**

The County argues that it cannot be held liable for the decision to jail West because that decision was not made as part of a widespread practice and because McDonough, then the Director of the Prince George's County Department of Corrections, was not a policymaker with respect to release decisions at the jail because those decisions should ultimately be made by a court. (Doc. 19-1 at 8–10.) This argument ignores controlling precedent, directly contradicts the County's own stipulation regarding McDonough's role, and distorts the respective roles of courts and jail administrators in the criminal legal system.

The County is incorrect that it cannot be held liable under *Monell* because "Plaintiff only identifies his own incident to establish an unconstitutional policy." (Doc. 19-1 at 9.) Controlling Supreme Court precedent holds that that "municipal liability may be imposed for a single decision by municipal policymakers." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). Even though Plaintiff has now cited *Pembauer* twice before this Court, twice explained why it governs here, and twice explained why the County's proffered authority is not applicable (*see* Doc. 18-1 at 3–4; Doc. 14 at 12), the County still has not attempted to distinguish *Pembauer*, nor even cited it.[1]

---

[1] Instead of addressing West's argument, the County copied this portion of its brief verbatim from its first (improperly filed) motion to dismiss.

2

*Pembauer* applies here, and, applying it, the County is liable for the single decision of its relevant policymaker.

In an additional attempt to avoid responsibility, the County argues that McDonough "was not the 'final policymaking authority' in matters regarding the conditions of release" of detainees. (Doc. 19-1 at 10.) But it has stipulated that "[a]t all times relevant to this lawsuit, McDonough had final policymaking authority over all jail policy decisions." (Doc. 18-2 at ¶ 25.) Surely "jail policy decisions" include decisions about when to obey and when to disobey a judge's order to release someone, and the County does not argue otherwise. The County, therefore, should not be heard to contend that it is not responsible for McDonough's decisions. It has already stipulated that she is the relevant decisionmaker.

The County's additional argument that it cannot be liable because ultimately courts, not wardens, decide who should be in jail misunderstands the case against the County. West does not argue that the Director is empowered by state law to determine who *should* be jailed. That is surely the courts' responsibility. West argues that the Director is empowered by state law to determine who *is* jailed.

Specifically, the County does not dispute that, under Maryland law, the Director of the Prince George's County Department of Corrections enjoys the powers of a sheriff with respect to the jail and, therefore, that the Director is the officer empowered by state law to control release and detention decisions within the jail. (*See* Doc. 18-1 at 4.) The fact that McDonough chose to exercise that authority concededly in *violation* of a state-court order—and that West accordingly filed an emergency petition to a court, seeking an order that she immediately comply with the law and release him—does not change this. *E.g.*, *Monroe v. Pape*, 365 U.S. 167, 183 (1961) (holding that state officer can be responsible under § 1983's color-of-law provision even when he violates

3

state law), *overruled on other grounds by Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). And even if all of that were not true and dispositive of the issue before the Court, the Circuit Courts of Maryland are not final county policymakers under state law. *See Williams v. Anderson*, 753 F. Supp. 1306, 1311 (D. Md. 1990) ("[P]laintiff's contention that a circuit court judge is a policy maker for the county in which he or she sits, for purposes of section 1983 liability, is erroneous."); *and compare McMillian v. Monroe County,* 520 U.S. 781, 786 (1997) (explaining the factors used to determine whether government officials' actions occasion state or county responsibility). The County's arguments are without merit. It is responsible for West's detention.

**B.     The County Violated West's Rights.**

The County does not dispute that, as a matter of state law, West was entitled to be released. As Plaintiff explained, releasing people from detention who are legally entitled to be released is among the foundations of the rule of law, and three related constitutional provisions protect against such government overreach: Overdetention of those who are legally entitled to release violates the Fourth Amendment and the substantive and procedural components of the Fourteenth Amendment's Due Process Clause. (*See generally* Doc. 18-1 at 6–9.) In this Circuit, substantive due process is likely the most appropriate constitutional lens for this case, but all three doctrines are potentially applicable. (Doc. 18-1 at 9–12.)

The County appears to argue in opposition that it may constitutionally jail people for weeks without any judicial authorization so long as its decisionmaker is subjectively motivated by desires other than criminal investigation (Doc. 19-1 at 11–12); the detention itself does not "constitute punishment" (Doc. 19-1 at 16); the detention is imposed for "administrative needs," rather than "disciplinary reasons" (Doc. 19-1 at. 20); or if the detention is somehow "mandated" by non-binding CDC "Guidance on Management" of a communicable disease in correctional facilities (Doc. 19-1 at 10, 21). This is not the law. Many cases, including binding law from the Fourth

4

Circuit, hold that arrestees have a federal constitutional right to be released promptly upon the expiration of the legal basis to detain them, and that this right is violated when jailers are indifferent to—let alone, as is concededly the case here, fully cognizant of—that right. The County asks this Court to ignore those cases and become the first in the country to hold that a jailer may permissibly take matters into her own hands and jail people in violation of state-court orders whenever they test positive for Sars-CoV-2. This the Court should not do. Whichever constitutional standard this Court applies—and, as explained in West's opening brief, substantive due process is likely the correct standard—the County violated West's rights.

        *1.*     *The Special-Needs Exception Does Not Apply to Indefinite Detentions.*

The County's principal argument against West's Fourth Amendment claim is that the "special needs" exception to the Fourth Amendment applies to this case and, therefore, detaining West was permissible if it was reasonable. (Doc. 19-1 at 11–12.) Even setting aside the argument that detaining West was not reasonable under the circumstances because McDonough did no more than make one or two phone calls before deciding to lock a man in solitary confinement for two weeks in violation of a court order, the County's argument fails because the special-needs doctrine does not apply to lengthy detentions.

To seize a person, the Constitution ordinarily requires a warrant based on a finding of probable caused issued by a neutral and detached judicial officer. *See* U.S. Const. amend. IV; *Shadwick v. City of Tampa*, 407 U.S. 345, 350 (1972) ("This Court long has insisted that inferences of probable cause be drawn by 'a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.'" (internal citation omitted)). Several exceptions exist to both the warrant requirement and the probable-cause requirement, and the County must rely on such an exception because the County concedes (as it must) that it had no judicial authorization to jail West.

5

The special-needs exception on which the county attempts to rely allows officers to seize and search certain people and things for purposes other than ordinary law enforcement, by, for example, requiring drug tests without individualized suspicion for people whose jobs would make drug use especially dangerous. *See, e.g.*, Eve Brensike Primus, *Disentangling Administrative Searches*, 111 COLUM. L. REV. 254 (2011) (explaining administrative-search doctrine). Under the special-needs exception, warrantless seizures are permitted on lesser suspicion and without a warrant in certain circumstances that do not implicate the ordinary needs of law enforcement, *id.*, but only where those detentions are brief enough that getting a warrant would be impracticable, *see, e.g., United States v. Brignoni-Ponce*, 422 U.S. 873, 881 (1975). After a seizure based on special needs—or based on any other exception to the warrant and probable-cause requirements—the government must seek post-hoc authorization from a neutral and detached magistrate or else release the person within, presumptively, 48 hours. *County of Riverside v. McLaughlin*, 500 U.S. 44, 57 (1991).

The County's argument that it was permitted under the Fourth Amendment to detain West for two weeks without judicial authorization because the County's purported purpose was not criminal law enforcement fails. Even if a brief seizure of West may have been justified by a special need to investigate whether a suitable quarantine facility could be found and, if not, to seek authorization from the appropriate state authorities to continue West's detention, that would not excuse what the County actually did, which is simply jail West for two weeks while *knowing* that his detention was specifically *not* authorized by a neutral and detached magistrate and without even attempting to put the issue before a judge. (Doc. 18-2 ¶ 21 ("McDonough was aware that West had satisfied the conditions the court imposed on his release.").)

    2.  *The County Applies the Wrong Substantive-Due-Process Standard*

The County resists West's substantive-due-process claim by characterizing it as a challenge to the *conditions* of his confinement, when in fact it is a challenge to the *fact* of his confinement.[2] (Doc. 19-1 at 15 (arguing that the "central inquiry" is "whether the conditions imposed on the pretrial detainee constitute punishment" (quotation marks omitted)).) Under the rule in *Bell v. Wolfish*, on which the County relies, prison and jail administrators are accorded wide deference to manage their facilities for security. 441 U.S. 520, 547 (1979). And, therefore, conditions of confinement are illegal under *Bell* only where they are so out of proportion to security needs as to realistically constitute punishment. *Id.* But a different standard applies to substantive-due-process claims alleging that the detention itself is illegal. West explained this standard, citing many cases from across the country, in his opening brief. (Doc. 18-1 at 7–8.)

The County does not attempt to (and cannot) distinguish these cases. Instead, it argues, relying on the wrong legal standard, that West's detention was lawful because it was compliant with CDC guidelines (which, as explained below, it was not) and because McDonough did not subjectively intend to punish West. (Doc. 19-1 at 17–18.) These are non sequiturs. The question here is not whether West's particular conditions of confinement met a constitutional minimum of care, as in *Bell* and the other cases cited by the County. It is whether West should have been jailed *at all*. He should not have been.

---

[2] The County begins its argument with the sentence "The PLRA codified the long-standing doctrine of judicial deference to jail and correctional administrators in the operation of their facilities." The Prison Litigation Reform Act does not apply to this case because (among many other reasons) West is not a "prisoner" for purposes of this lawsuit. *E.g.*, 42 U.S.C.A. § 1997e. The County does not discuss the PLRA any further, and so West assumes the inclusion of this sentence was in error and does not represent an attempt to argue that the PLRA controls this case. The paragraph that the sentence begins and the paragraph following it appear verbatim in the County's memorandum of law in support of its motion to dismiss the amended complaint in another case where the PLRA was relevant. *See Seth v. McDonough*, No. 8:20-cv-01028-PX, Doc. No. 128-1 at 29 (D. Md. July 17, 2020).

Further, the doctrine that governs this claim does not require an express intent to punish to find a constitutional violation. Instead, jailers are liable for illegally confining people beyond the expiration of the legal authority to do so whenever the jailers are deliberately indifferent to the fact that the detainees are entitled to release. (Doc. 18-1 at 7–8 (collecting cases).) Here, McDonough was deliberately indifferent *a fortiori*: She subjectively knew beyond any doubt that West was entitled to release and chose not to release him. (Doc. 18-2 ¶ 21.) The County does not, and cannot, contest this.

### 3.     The County Applies the Wrong Procedural-Due-Process Standard

Finally, the County argues that West's procedural-due-process claims cannot succeed because the County's decision to jail him was "administrative" rather than "disciplinary." (Doc. 19-1 at 18–19.) The County again takes a legal doctrine out of the context in which it governs. The County relies on cases holding that jailers do not violate detainees' due-process rights by imposing certain restrictions on detainees' liberty *within* prisons. *E.g.*, *Williamson v. Stirling*, 912 F.3d 154, 175 (4th Cir. 2018) (discussing legal standard governing restrictions on liberty within custody, not extended custody without judicial authorization). In this case, the County intentionally kept West in jail for two weeks without any legal authority to do so. The County's actions, then, violated West's procedural-due-process rights to a hearing before an extended deprivation of his physical liberty (Doc. 18-1 at 9), and the cases on which it relies do not help it argue otherwise.

Indeed, the rule of law requires that lengthy deprivations of citizens' liberty be subject to more than a single County official's supposed intent to protect the public. Instead, the Supreme Court "repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas*, 441 U.S. 418, 425 (1979). Maryland law, for these reason, requires evaluations, notice, and a hearing before people may be quarantined for public health purposes. (Doc. 18-1 at 10–11 (discussing Md. Code Ann.,

8

Health-Gen. §§ 18-905, 906).) McDonough made no attempt to follow the law as it appears in either the Maryland code or clear Supreme Court doctrine regarding civil commitments. She instead did minimal diligence about where Plaintiff might go if released and then decided to ignore a court order and lock West in isolation in a criminal facility for nearly two weeks. The Due Process Clause requires much more.

### 4. Interim CDC Guidance For Jails Did Not Provide Legal Authority To Overdetain West.

Finally, throughout its brief, the County repeatedly claims that a federal CDC document called "Interim Guidance on Management of COVID-19 in Correctional and Detention Facilities" somehow provided affirmative authorization for the County to detain West beyond the time a court ordered him released. (Doc. 19-1 at 9 (describing "West's CDC mandated medical isolation after bond was posted"); 13 (claiming the "CDC mandated quarantining those infected"); 17 (claiming that West's isolation was "[p]ursuant to the CDC Guidelines"); 21 ("When read in context, the CDC Guidelines clearly mandate that those detainees that tested positive for COVID-19 must be medical [sic] isolated for fourteen (14) days.").). These statements are meritless. Interim "guidance" from the CDC about best practices for public health in correctional facilities has no legal bearing on the release date of any detainee. *See, e.g.*, *Mays v. Dart*, 974 F.3d 810, 823 (7th Cir. 2020) ("The CDC Guidelines—like other administrative guidance—do not themselves set a constitutional standard."). And regardless, as West explained in his opening brief, the idea that the guidelines somehow "mandate" confinement and isolation of detainees like West who are legally entitled to release is incorrect. (Doc. 18-1 at 11 & n.3.) The document says the opposite: the CDC recommended that facilities "restrict cases from leaving the facility while under medical isolation precautions, *unless released from custody*," (Doc. 19-3 at 17 (emphasis added))—which shows that the CDC too recognized that a right to release trumps "medical isolation" within a jail. The

9

County points to no Maryland or federal authority that adopts the CDC interim guidance as legally superior to court-imposed conditions of release, nor does it cite anything specific in the guidance that authorized its extraordinary and unconstitutional action even if, contrary to fact, it did constitute authority to avoid the normal requirements of the Fourth or Fourteenth Amendment.

### C.     The County is Estopped to Argue That it Did Not Violate West's Rights.

Finally, the County is estopped to argue that it did not violate West's rights because it convinced Judge Xinis in *Seth* not to issue an injunction forbidding it from jailing people in similar circumstances by arguing that those circumstances would present a substantive-due-process violation. In his opening motion, West offered to withdraw his contention that the County's earlier positions should estop it here if the County "offer[ed] a good-faith explanation of why its two positions differ." (Doc. 18-1 at 15.) The County has not done that. Instead, it simply denies that its positions differ at all. That is impossible to square with Judge Xinis's statements in *Seth*.

Specifically, in its brief to this Court, the County writes that:

> There was no admission that West's continued medical isolation constituted a constitutional violation. The admissions made in *Seth* are same [*sic*] factual admissions made in this case . . . . The County has no [*sic*] switched positions or offered new explanations for its actions. The County maintains, as it does in *Seth*, that all actions by the County were committed with the purpose to protect the health and safety of County residents during this unprecedented pandemic.

(Doc. 19-1 at 20–21.) This does not square with Judge Xinis's ruling in *Seth*, which stated that the County "acknowledged at the hearing that any such case [of a detainee being held in violation of a state-court release order] would present a substantive due process violation." *Seth v. McDonough*, 461 F. Supp. 3d 242, 265 (D. Md. 2020); *see also Seth v. McDonough*, No. 8:20-cv-01028-PX, Doc. 96, at 57:16–21 (Hearing Transcript) (D. Md. May 20, 2020) (Judge Xinis stating "Defendants have repeatedly represented to me that to the extent there is anyone who has a release

10

order that has been satisfied and the detention facility continues to hold that person, it's its own due process violation.").

The record speaks for itself. Given the circumstances in which each case arises, West cannot escape the conclusion that the County is attempting unfairly to have it both ways. In *Seth*, the County argued that it should not be enjoined from detaining people who are entitled to release because doing so would violate the substantive-due-process rights of those people, *id.*, and here it argues that it should not be liable to one of those people because doing so does not violate his substantive-due-process rights. (Doc. 19-1 at 15–17.) This meets the standard for judicial estoppel.

## II. CONCLUSION

For the foregoing reasons, West is entitled to judgment as a matter of law that the County is liable to him for violation of his Constitutional rights. This Court should, therefore, grant West's motion for partial summary judgment and deny the County's motions to dismiss and for summary judgment.

Respectfully submitted,

*/s/ Charles Gerstein*
Charles Gerstein
GERSTEIN HARROW LLP
611 Pennsylvania Ave SE, No. 317
Washington, DC 20003
charlie@gerstein-harrow.com
(202) 670-4809

*/s/ Jason Harrow*
Jason Harrow
GERSTEIN HARROW LLP
3243B S. La Cienega Blvd.,
Los Angeles, CA 90016
jason@gerstein-harrow.com
(323) 744-5293

*Attorneys for Plaintiff Jermall West*