IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **JERMALL WEST** | * |
| | * |
| Plaintiff | * |
| | * |
| vs. | * Case No: 21 CV 863 |
| | * |
| **PRINCE GEORGE'S COUNTY, MARYLAND** | * |
| | * |
| | * |
| Defendant. | * |
| _____ | * |

**DEFENDANT'S REPLY TO PLAINITFF'S PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 105.2(c) of the <u>Federal Rules of Civil Procedure</u>, Defendant Prince George's County, Maryland, replies to Plaintiff's Motion for Summary Judgment. In support thereof, Defendant offers the following:

### INTRODUCTION

The COVID-19 global pandemic taught many life lessons. As a society, we had to learn that needs outweighed wants. Individuals' desires to be at the mall, local bar or family event did not trump the need to maintain social distance and abide by the stay at home order. Thus, even though the County wanted to release West to lower its jail population and promote social distancing, the need or duty to provide reasonable medical care to a symptomatic detainee in their custody outweighed the

1

County's wants.  Although West wanted to be released, his need for reasonable medical care was paramount during a global pandemic were paramount to his desire.

## ARGUMENT

I. **THE COURT IS NOT REQUIRED TO FIND A *MONELL* CLAIM BASED ON ONE ISOLATED INCIDENT.**

Plaintiff's steadfast reliance on Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986) and criticism of Defendant's arguments shows West's blatant disregard of the unprecedented pandemic that was spreading uncontrollable through our county, state, and country and the race to implement appropriate policies and procedures to safeguard the public.  Defendant provided this Court with Fourth Circuit legal authority as to why Pembaur should not be followed in this instance. See Greensboro Prof. Fire Fighters Ass'n, Local 3157 v. City of Greensboro, 64 F.3d 962, 967 (4th Cir. 1995) (affirming summary judgment in light of only two (2) prior similar incidents).  Defendant recognizes that Pembaur stands for the proposition that a "municipality liability *may* be imposed for a single decision by municipal policymakers." Id. at 475 U.S. 469, 480 (1986)(emphasis added), however, it argues that, under these unique circumstances, this Court should not impose liability.  The Supreme Court did not mandate a finding of municipal liability based on single decision but left the decision to the court after the evaluating the circumstances presented in the case.

Here, the circumstances do no warrant such a finding. In <u>Seth v. McDonough</u>, 461 F. Supp.3d 242, 265 (Md. May 21, 2020), the court found that there was no policy of detaining COVID-19 positive detainees in contravention to a state-court release order. In fact, the court found that "Defendant worked actively with state prosecutors, public defenders and the courts to reduce the entire detained population and maintains such efforts to this day. Between March 1, 2020 and April 24, 2020 – a matter of couple months – the jail population at the Facility decreased from 720 inmates to 534 (approximately 26%)." <u>Id</u>. The Court concluded that "Defendant's actions thus fall in line with the evident policy to expediate the release detainees who satisfy the conditions of a state-court release order." <u>Id</u>.

Moreover, West's medical records clearly demonstrate that his medical isolation for 14-days after experiencing COVID-19 symptoms and testing positive for the virus was pursuant to CDC Guidelines. The County had a duty to provide reasonable medical care to all those in its custody. To release West, who had nowhere to continue the medical isolation, was symptomatic, and no identifiable means of care for himself during a pandemic where the state issued a state of emergency and the county issued a stay at home order is unconscious able and would shock the conscious of this court.

For all of the above reasons, the decision to continue West's CDC mandated medical isolation under these circumstances did not establish municipal policy for

§1983 liability. Thus, the Complaint fails to state any § 1983 claim based on West's medical isolation for COVID-19 at the jail and must be dismissed.

## II. THE COUNTY DID NOT VIOLATE WEST'S CONSTITUTIONAL RIGHTS.

There no dispute that West contracted COVID-19 in PGCDOC while detained on criminal charges and bond had not yet been set or paid on his behalf. Thus, as a detainee within the facility, the County had a constitutional duty to provide West reasonable medical care. Brown v. Harris, 240 F.3d 383, 389 (4th Cir. 2001). Pursuant to CDC Guidelines, medical quarantine for 14-days was mandated for any COVID-19 positive detainee. ECF 19-3, CDC Guidelines, p. 15. West's medical records demonstrate the clear intent of the County to fulfill its constitutional duty to provide West reasonable medical care under the circumstances present during that period of time during the pandemic. ECF 19-4, West Medical records.

A. Special needs exception does apply to the present case.

West's failure to dispute the applicability to the CDC Guidelines and mandated 14-day medical isolation that was accepted by the court as the standard of care for incarcerated individuals proves that the special needs exception applies to this case. See Seth v. McDonough, 461 F. Supp.3d 242 (D. Md. 2020); Banks v. Booth, 459 F. Supp.3d 143 (DDC. April 27, 2020); Swain v. Junior, 961 F. 3d 1276 (11th Cir. 2020). In Seth, as in other cases involving incarcerated individuals and COVID-19, the CDC Guidelines have been accepted by the court as the standard of

care for incarcerated individuals during the pandemic. West argues that the special needs exception is inapplicable because the County did not do enough to find West suitable accommodations to continue his medical isolation and his medical isolation was lengthy. First, under the circumstances present during West's medical isolation, the County's response to West's unique predicament was reasonable. The phone calls to West's family and the public defender to determine where West could be safely medical isolated shows the County's intent to not violate West's due process rights. As stated previously herein, the County was responding to the COVID-19 pandemic and implementing the CDC Guidelines by working the state prosecutors, public defenders, and the state courts to reduce the jail population. Id. The medical isolation of individuals displaying COVID-19 symptoms and/or testing positive for COVID-19 was not discretionary. There is no evidence that the County kept West in medical isolation for any reason other than to reduce the risk of him infecting someone with the deadly corona virus and to provide him with immediate medical treatment upon worsening of symptoms. To allow West to break medical isolation and subject County residents to exposure to a deadly virus is like allowing a drunk driver to drive home.

Second, West argues that the special needs exception is inapplicable because the medical isolation was too long. Again, West fails to dispute the applicability and the validity of the CDC Guidelines. The CDC Guidelines mandates a 14-day

medical isolation and West was medical isolated for 14-days. Upon the completion of the medical isolation, West was immediately released. As stated previously herein, the County's policy, pursuant to the CDC Guidelines, was to reduce the jail population and promote social distancing by appropriate state agencies to expediate the release of incarcerated individuals. Id. West's detention was only long enough to ensure that he was no longer contagious and he was on his way to full recovery. Had the state court been able to schedule a hearing early during his medical isolation, the County would have presented West's medical condition to the court and evidence of the danger he posed to the public.

B. The County did not act with deliberate indifference.

"A 'seizure' triggering the Fourth Amendment's protections occurs when a person's freedom of movement is terminated or restrained, either by physical force or sow of authority." Barnes v. District of Columbia, 793 F.Supp.2d 260 (DDC. June 24, 2011), citing Brendlin v. California, 551 U.S. 249, 254, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007). In Barnes, plaintiffs filed suit against the District of Columbia asserting their overdetention violated their Fourth, Fifth and Eighth Amendment constitutional rights. The court found that plaintiffs were not "seized" within the meaning of the Fourth Amendment because they were already in custody at the time their release was ordered and there was no evidence that a fresh seizure occurred.

Thus, the court granted summary judgement and entered judgment in favor of the District of Columbia on Plaintiffs' overdetention claim.

As in Barnes, West was already in custody and in medical isolation when someone posted bond on his behalf. ECF 18-2, 10. Also, there is no evidence that the County committed a fresh seizure of West. Thus, West's overdetention claim should suffer the same fate as Barnes and judgment should be entered in favor of the County.

Assuming arguendo the court finds that West was subjected to a new seizure, West's seizure and continued medical isolation did not constitute deliberate indifference. According to the West, the Court must determine whether the County acted with deliberate indifference when it violated West's Fourth Amendment's substantive due process rights. Stated differently, the court must determine whether the West's continued medical isolation due to experiencing COVID-19 symptoms and testing positive for the contagious virus after bond was posted on his behalf was committed with deliberate indifference. ECF 18-1, p. 8. Thus, to find a substantive due process violation, the Court must find that the continued medical isolation of West was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscious." County of Sacramento v. Lewis, 523 U.S. 833, 847 n. 8 (1998). Moreover, as West argues " a plaintiff must prove that 'defendant actually

knew of and disregarded a substantial risk of serious injury to the detainee.'" ECF 18-1, p. 9 citing <u>Young v. City of Mount Ranier</u>, 238 F.3d 567, 576 (4th Cir. 2001).

Here, the undisputed facts do not support such a finding. The continued medical isolation of West cannot be said to be "so egregious, so outrageous that it may fairly be said to shock the contemporary conscious" when the CDC Guidelines mandated medical isolation and West does not dispute the standard established by the CDC. Nor should it be found to shock the conscious or be egregious or outrageous when the medical professionals were instructing the public to quarantine for 14-days if you begin to experience symptoms of COVID-19 or tested positive. Moreover, it should not be found to shock the conscious when it is undisputed that West had no other safe place to continue his medical isolation. Also, West's detention ended immediately following the 14-day medical isolation; and thus, not be said or described as indefinite. Finally, West provides this court with no evidence of any serious injury sustained by him from the continued medical isolation. On the contrary, the undisputed evidence shows that West was received regular, periodic evaluation of symptoms by trained medical professionals and experienced, steady, gradual improvement in symptoms. ECF 19-4. Thus, even under the deliberate indifference standard, the County cannot be found to have violate West's substantive due process rights.

C. <u>The County did not violate West's procedural due process rights</u>.

West argues that the County violated his procedural due process rights when it failed to provide him with evaluations, notice, and a hearing before his may be quarantined for public health purposes. ECF 18-1 at 10-11.  Again, West's argument continues avoid the stark reality of the impact the COVID-19 pandemic had on our lives and system of government. There is no evidence that West's continued medical isolation was planned before bond was posted.  Nor is there any evidence that once bond was posted, the decision to continue medical isolation in the facility was made. On the contrary, the undisputed evidence shows that the County wanted to West out of its facility as soon as safely possible.  ECF 18-2, 17-19.  Moreover, the efforts of the Office of Public Defender to obtain a hearing date on West's habeas corpus petition demonstrates the availability of the appropriate judicial officer to hear West's petition.  As to of the date of the filing of West's Habeas Corpus petition, the court was on notice of his detention and could not hear his petition before April 19, 2020, which was days after his release from medical isolation. No one denied him his right to be heard, but the health and safety of his family and the community could not be disregarded by allowing a symptomatic COVID-19 detainee to wander the streets of Prince George's County, Maryland during a global pandemic.

> D. <u>The CDC Guidelines have been widely accepted by Federal Courts as the standard of care for correctional facilities during the pandemic</u>.

Although the CDC Guidelines have no legal authority regarding the release of incarcerated or detained individuals, it does provide guidance on policy and

procedural for correctional facilities during the corona virus pandemic. The CDC Guidelines have been accepted by this court as the standard of care during this pandemic. Seth v. McDonough, 461 F. Supp.3d 242 (D. Md. 2020. As such, the County did implement policies and procedures in compliance with CDC Guidelines. All policies and procedures were not automatically implemented on the first discovery of COVID-19 in PGCDOC. Id. Nor were such policies and procedures immediately implemented in any correctional facility, nursing home, or other congregate setting. Even the CDC did not provide any guidance until early March with the release of Interim CDC Guidelines, which have been revised and updated at least twice during the pandemic.

    E.  <u>Defendant is not estopped from arguing no violation</u>.

As stated previously, the County did not admit that it violated West's constitutional rights. The County admitted to the undisputed facts of this case. The Court in <u>Seth</u>, without reviewing the specific facts concerning West or identifying West made a statement regarding overdetention in the context of whether to issue a TRO on the subject. <u>Id</u>.

And if this court is inclined to find that such a violation occurred as West suggest the <u>Seth</u> Court found findings, then it must also find that no such policy exists as the <u>Seth</u> Court also found. <u>Id</u>. The court found that there was no policy of

overdetaining positive COVID-19 detainees. Thus, as West argued the County cannot have it both ways, neither can he.

## CONCLUSION

For the foregoing reasons, Prince George's County, Maryland respectfully requests that this Court issue an Order dismissing the Complaint in its entirety for failure to state a claim under Rule 12(b)(6) or, alternatively, granting summary judgment in favor of Prince George's County, Maryland.

Respectfully submitted,

**RHONDA L. WEAVER
COUNTY ATTORNEY**

**ANDREW J. MURRAY
DEPUTY COUNTY ATTORNEY**

/s/ *Shelley L. Johnson*
Shelley Lynn Johnson, Fed. Id. 15853
**PRINCE GEORGE'S COUNTY OFFICE OF LAW**
Wayne K. Curry Administration Building
1301 McCormick Drive
Suite 4100
Largo, Maryland 20774
Telephone: (301) 952-5225
Facsimile: (301) 952-3071
sljohnson@co.pg.md.us

Filed: 06/28/21