# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

JERMALL WEST,

    Plaintiff,

    v.

PRINCE GEORGE'S COUNTY,
MARYLAND,

    Defendant.

Civil Action No. TDC-21-0863

## MEMORANDUM OPINION

Plaintiff Jermall West has filed this civil action pursuant to 42 U.S.C. § 1983 against Defendant Prince George's County, Maryland ("the County") alleging that the County violated his constitutional rights by continuing to detain him after bail had been posted on his behalf. Pending before the Court are West's Motion for Partial Summary Judgment and the County's Cross Motion for Summary Judgment, which are fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, West's Motion will be GRANTED, and the County's Motion will be DENIED.

## BACKGROUND

West is a 35-year-old man who was arrested on January 9, 2020 and brought to the Prince George's County Detention Center ("the PGCDC") in Prince George's County, Maryland. The next day, a judge of the District Court of Maryland for Prince George's County ("the District Court") ordered West to be detained pending trial. On March 20, 2020, West's criminal defense attorney filed a motion seeking West's release pending trial. In implementing measures in response to the COVID-19 pandemic, the Prince George's County Department of Corrections

("PGCDOC") had begun testing detainees exhibiting COVID-19 symptoms and placing them in medical isolation.  On March 28, 2020, while his motion seeking release was pending, West reported symptoms consistent with COVID-19, including a sore throat and headache, and was placed in medical isolation within PGCDC.  He received a COVID-19 test on March 30, 2020.

Two days later, on April 1, 2020, the District Court ordered West released upon the securing of a $5,000 bond.  The only other conditions of release were that West was barred from having any contact with the complainant in the pending case and from possessing any firearms or weapons.  On April 3, 2020, an individual acting on West's behalf posted the $500 to secure a bond for his release.  The bond imposed no conditions on West's release other than his appearance in court.

On April 4, 2020, while West was still detained at the PGCDC, his COVID-19 test was returned with a positive result.  At that time, Mary Lou McDonough, the Director of PGCDOC, was aware that the bail conditions set forth in the release order had been satisfied.  She called West's mother, with whom he lived, to notify her that West needed to quarantine for 14 days after his release.  West's mother informed McDonough that he "could not come home."  Joint Statement of Undisputed Facts ("JSUF") ¶ 18, ECF No. 18-2.  McDonough also spoke with the Office of the Public Defender, which reported that it was unsuccessful in attempting to get West's brother to take him in.  McDonough took no further steps to find West a place to go.  Instead, she decided to keep him in medical isolation at the PGCDC.  West thus remained detained at the PGCDC.

On April 14, 2020, West's criminal defense attorney filed in the Circuit Court for Prince George's County, Maryland ("the Circuit Court") an emergency Petition for a Writ of Habeas Corpus seeking his release.  On April 16, 2020, before the petition was ruled upon, West was released from the PGCDC.

2

## DISCUSSION

In his Motion for Partial Summary Judgment, West argues that McDonough's decision to keep West in detention after the bond was posted violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution, and that the County is liable for that constitutional violation. In its Cross Motion for Summary Judgment, the County argues that it is entitled to summary judgment on West's claim because it is not a proper defendant in this case and because West has failed to establish that his prolonged detention violated his constitutional rights. Where the parties agree upon the material facts in this case, they both request judgment as a matter of law.

### I.     Legal Standards

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court must believe the evidence of the non-moving party, view the facts in the light most favorable to the nonmoving party, and draw all justifiable inferences in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "A material fact is one 'that might affect the outcome of the suit under the governing law.'" *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson*, 477 U.S. at 248). A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248–49.

"When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment

3

as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Philip Morris, Inc. v. Harshbarger*, 122 F.3d 58, 62 n.4 (1st Cir. 1997)).

## II.      Municipal Liability

As a threshold issue, the County argues that it is not a proper defendant in this case and thus cannot be liable for any violation of West's constitutional rights.  Section 1983 permits a plaintiff to recover for the "deprivation of" constitutional rights by a "person" who was acting "under color of" state law.  42 U.S.C. § 1983 (2018).  Generally, a local government such as a county "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  Instead, a plaintiff must show that the "municipality cause[d] the deprivation 'through an official policy or custom'" for liability to attach. *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)).  An official policy or custom can arise (1) "through an express policy, such as a written ordinance or regulation"; (2) "through the decisions of a person with final policymaking authority"; (3) "through an omission . . . 'that manifests deliberate indifference to the rights of citizens'"; or (4) "through a practice that is so 'persistent and widespread' as to constitute a 'custom or usage with the force of law.'" *Id.* (quoting *Carter*, 164 F.3d at 217).  Here, West argues that the official policy or custom arose through the decisions of a person with final policymaking authority, PGCDOC Director McDonough.

In *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), the United States Supreme Court recognized that for purposes of municipal liability under § 1983, an official policy or custom can be created by "the decision to adopt [a] particular course of action," so long as the decision is "properly made by that government's authorized decisionmakers." *Id.* at 481.  In that instance, "the decisionmaker's actions may fairly be attributed as reflecting municipal policy." *Hunter v.*

4

*Town of Mocksville*, 897 F.3d 538, 555 (4th Cir. 2018) (citing *Pembaur*, 475 U.S. at 481). Ordinarily, the "touchstone inquiry" for this type of liability is whether the decisionmaker possessed "final authority to establish municipal policy with respect to the action ordered," a question of state law. *Id.* at 554-55. Here, however, the parties do not dispute that McDonough, the Director of the PGCDOC, possessed "final policymaking authority over all jail policy decisions," JSUF ¶ 25, or that she was the official who decided to extend to West's detention. Indeed, under Maryland law, the "managing official of a local correctional facility is responsible for the safekeeping and care of each inmate or other individual detained in . . . the local correctional facility." Md. Code Ann., Corr. Servs. § 11-103 (LexisNexis 2017). As relevant here, "[t]he administration of [PGCDC] shall be under the direction of the Director" who "shall have full power and authority to make, repeal, alter or amend such rules and regulations . . . for the maintenance, discipline and conduct of the County jail, prisoners, and employees." Prince George's County, Md. Code § 18-108(a); *id.* § 18-110.01(a) (Supp. 2021). Although the County argues that the Circuit Court, not McDonough, was the relevant decisionmaker, the decision at issue here is not whether West should have been ordered released, but whether West would remain in detention at PGCDC despite the District Court's release order. This decision to continue to hold West in detention falls squarely under McDonough's authority.

The County nevertheless argues that there is no municipal liability for McDonough's decision because one decision is insufficient to establish an official policy or custom. In *Pembaur*, however, the Supreme Court held that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur*, 475 U.S. at 480. Further, municipal liability is not limited to decisions establishing "formal rules or understandings . . . that are intended to, and do, establish fixed plans of action to be followed under similar circumstances

consistently and over time." *Id.* at 480-81. Rather, a decision by an authorized decisionmaker to take a particular action is attributable to the municipality even if it is "tailored to a particular situation and not intended to control decisions in later situations," and regardless of "whether that action is to be taken only once or to be taken repeatedly." *Id.* at 481. Under these principles, the Court held that a county could be held liable under § 1983 for the County Prosecutor's "command[]" to law enforcement officers to forcibly enter the plaintiff's medical services clinic to secure material witnesses, which resulted in a violation of the Fourth Amendment, because the County Prosecutor "could establish county policy" under state law and "was acting as the final decisionmaker for the county" in instructing the officers, even though the order represented a single instance of decisionmaking and applied only to the plaintiff's circumstances. *Id.* at 472-73, 484-85. The same is true here: even though McDonough's decision to continue to detain West in contravention of his release order was a single instance of decisionmaking addressing West's specific circumstances, the County may be held liable for any resulting constitutional violation so long as the decision was made by the authorized decisionmaker. *See id.* at 484-85.

The County's citation to *Greensboro Professional Fire Fighters Association, Local 3157 v. City of Greensboro*, 64 F.3d 962 (4th Cir. 1995), does not alter this conclusion. Though the County argues that *Greensboro* illustrates that two decisions are insufficient to establish an official policy or custom, there, the court's conclusion that evidence of anti-union animus by "two high officials" was insufficient to establish municipal liability for discrimination on the basis of union activity was based on consideration of whether there was an official policy or custom based on a practice so "widespread" as to constitute a "custom or usage with the force of law." *Id.* at 966-67. Municipal liability based on an unofficial custom or practice is distinct from liability based on the actions of a final policymaking authority. *See Lytle*, 326 F.3d at 471. Indeed, in *Greensboro*, the

6

court first determined that the plaintiff had failed to prove that the city's fire chief was the final policymaking authority with respect to personnel decisions before examining whether an unofficial custom or practice existed. *Greensboro*, 64 F.3d at 966. Because West's theory of municipal liability is based on a decision by the final policymaking authority, *Greensboro* is of little relevance.

Finally, the County's claim that courts may choose, as a matter of discretion, not to apply municipal liability based on equitable consideration of the circumstances surrounding a decision is meritless. In support of this argument, the County points only to *Pembaur's* statement that "municipal liability *may* be imposed for a single decision by municipal policymakers under appropriate circumstances" as suggesting that the "Supreme Court did not mandate a finding of municipal liability based on [a] single decision but left the decision to the court after . . . evaluating the circumstances presented." County Reply at 2, ECF No. 24 (quoting *Pembaur*, 475 U.S. at 480) (emphasis added). In context, the Court's use of "may" plainly refers only to the fact that the imposition of municipal liability based on a single decision depends on whether that decision was either the act of a legislative body or an action by a government's authorized decisionmaker with "final authority to establish municipal policy with respect to the action ordered." *Pembaur*, 475 U.S. at 481. The Court will not read into § 1983 a grant of discretion to courts to decline to impose municipal liability based on equitable considerations that appears in neither the statutory language nor any Supreme Court precedent or other case law.

For these reasons, the Court finds that the County is liable for any constitutional violations arising out of McDonough's decision to keep West in detention after he was ordered released.

## III.   Constitutional Violation

As for whether McDonough's decision to detain West even though he had been ordered released violated West's constitutional rights, West argues that this action violated his right to substantive due process under the Fourteenth Amendment's Due Process Clause, his right to procedural due process under the same provision, and his right to be free from unreasonable seizures under the Fourth Amendment.

West's claim falls within the category of "overdetention" claims—those based on continued detention "for longer than legally authorized, whether because the plaintiff's incarcerative sentence has expired or otherwise." *Dodds v. Richardson*, 614 F.3d 1185, 1192 (10th Cir. 2010) (quoting *Holder v. Town of Newton*, 638 F. Supp. 2d 150, 153 (D.N.H. 2009)). The United States Court of Appeals for the Fourth Circuit has previously suggested that the Fourteenth Amendment's right to due process is the most appropriate constitutional lens through which to view the issue of overdetention. In *Campbell v. Florian*, 972 F.3d 385 (4th Cir. 2020), the Fourth Circuit noted that "other circuits have recognized the Fourteenth Amendment due process right to be free from continued detention." *Id.* at 394 (quoting *Johnson v. Hamett*, No. ELH-18-1059, 2019 WL 7185559, at *14 (D. Md. Dec. 23, 2019)); *see also Golson v. Dep't of Corrs.*, Nos. 90-7344, 90-7345, 1990 WL 141470, at *1 (4th Cir. Oct. 2, 1990) (stating that "[i]ncarceration beyond the termination of one's sentence may state a claim under the due process clause and the eighth amendment"). Other United States Courts of Appeals have generally examined such overdetention challenges as substantive due process claims. *See, e.g., Dodds*, 614 F.3d at 1205 & n.12; *West v. Tillman*, 496 F.3d 1321, 1327 (11th Cir. 2007) (per curiam); *Davis v. Hall*, 375 F.3d 703, 718 (8th Cir. 2004). The Court will therefore begin by addressing the substantive due process claim.

## A.    Substantive Due Process

At the outset, the Court notes that the County has previously taken the position in another case in this District that holding a "COVID-19-positive detainee . . . in violation of a state-court release order . . . would present a substantive due process violation," an acknowledgment that the court accepted in finding that the County had no continuing policy of doing so and in therefore declining to issue an injunction barring such overdetention based on COVID-19.  *Seth v. McDonough*, 461 F. Supp. 3d 242, 265 (D. Md. 2020).   Nevertheless, without any persuasive explanation for the about-face, the County now argues that its continued holding of West, a COVID-19-positive detainee, at PGCDC in violation of his state court release order did not violate substantive due process.  West argues that based on the County's representation in *Seth*, judicial estoppel bars it from asserting its present position, but the Court need not reach the issue of judicial estoppel because it independently finds that the County's overdetention of West violated substantive due process.

The Due Process Clause of the Fourteenth Amendment "contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them,'" and "[f]reedom from bodily restraint has always been at the core of the liberty protected" by it.  *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)).  As a result, there is a substantive due process right "to be free from continued detention after it was or should have been known that the detainee was entitled to release."  *Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009) (quoting *Cannon v. Macon County*, 1 F.3d 1558, 1563 (11th Cir. 1993)); *see Davis*, 375 F.3d at 712 (recognizing a "protected liberty interest in being free from wrongful, prolonged incarceration").  For a pretrial detainee, once the detainee is deemed eligible for release on bail and the bail amount is set, the

9

detainee has a liberty interest in exercising the option to post bail and be released. *See Steele v. Cicchi*, 855 F.3d 494, 502 (3d Cir. 2017) (citing *Dodds*, 614 F.3d at 1192, and *Campbell*, 586 F.3d at 840).

The right to substantive due process does not require the imposition of liability "whenever someone cloaked with state authority causes harm." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998). In cases involving executive action, this right protects against "egregious, arbitrary governmental conduct" that "shocks the conscience." *Young v. City of Mount Rainier*, 238 F.3d 567, 574 (4th Cir. 2001); *see Lewis*, 523 U.S. at 847 n.8. For a claim arising out of a custodial setting under circumstances when "actual deliberation is practical," courts will find a constitutional violation only if the prison official acted with "deliberate indifference." *Lewis*, 523 U.S. at 851. Deliberate indifference falls within the "'middle range' of culpability—that is, conduct that is more than negligent but less than intentional." *Young*, 238 F.3d at 574-75 (quoting *Lewis*, 523 U.S. at 849). It requires a showing that the defendant "actually knew of and disregarded a substantial risk of serious injury to the detainee." *Id.* at 575-76. Courts have generally applied a deliberate indifference standard to overdetention claims. *See West*, 496 F.3d at 1325-27 (applying the deliberate indifference standard to the plaintiffs' claims that they were improperly detained for weeks after their court-ordered release due to administrative failures); *Davis*, 375 F.3d at 707, 718 (applying the deliberate indifference standard to a claim that the plaintiff was wrongfully detained for 57 days past his court-ordered release date due to officials' failure to transmit the proper paperwork); *Armstrong v. Squadrito*, 152 F.3d 564, 567-68, 576-77 (7th Cir. 1998) (concluding that the deliberate indifference standard applied to the plaintiff's claim that his 57-day detention after his voluntary surrender without a court appearance, which occurred as a result of misfiled records, violated substantive due process). In this instance, although the County emphasizes that

its decisionmaking occurred during a state of emergency where it "had the unprecedent[ed] task of safeguarding the health and safety of detainees, staff, and the community" in the face of the "novel[]" and "severe" coronavirus, it does not argue for the application of a standard other than deliberate indifference.  County Opp'n Mot. Summ. J. at 2, ECF No. 19-1.  Particularly where West's prolonged detention lasted 13 days past the date when he was supposed to be released on bail, the Court finds that actual deliberation on whether to continue to detain West was practical, such that the deliberate indifference standard is applicable to this overdetention claim.

For an overdetention claim, to establish deliberate indifference, a plaintiff must show that (1) the defendant had "subjective knowledge of a risk of serious harm, consisting of continued detention when the plaintiff was entitled to be released"; (2) the defendant "disregarded that risk"; and (3) the disregard was by "conduct that is more than mere negligence." *Alcocer v. Mills*, 906 F.3d 944, 953 (11th Cir. 2018) (citing *West*, 496 F.3d at 1327).  Here, McDonough's actions meet this standard.  There is no dispute that McDonough "was aware that West had satisfied the conditions the court imposed on his release" and thus had a right to be released.  JSUF ¶ 21. Consequently, there can also be no dispute that McDonough knew that continuing to detain West at PGCDC would have at least created a substantial risk of, if not resulted in, serious harm in the form of unauthorized detention.  McDonough's actions were also not the result of mere negligence; rather, they were the product of a deliberate choice as McDonough affirmatively "decided to keep him in medical isolation in the jail."  JSUF ¶ 22.  Notably, in the approximately two-week period of overdetention, McDonough made no efforts beyond the initial inquiries to West's mother and attorney "to find West a safe place to go."  *Id.* ¶ 20.  The record is also devoid of any evidence that she took any measures to secure a court order authorizing the continued detention, despite her certain knowledge that West was being detained past when he had the right to be released.  Though

it is undisputed that McDonough's actions were not taken with malice or with an intent to harm West, that is not the standard. On these facts, where McDonough was specifically aware that West had a right to be released yet kept him detained for an additional 13 days, she acted with deliberate indifference to the harm of causing West to be detained without legal authority.

The County counters that there was no constitutional violation because the detention and medical isolation of West did not constitute punishment, complied with guidance issued by the United States Centers for Disease Control and Prevention ("CDC") for management of COVID-19 in correctional and detention facilities ("the CDC Guidelines"), and did not cause any serious physical harm. The argument that medical isolation was not punishment misconstrues the nature of West's claim. A pretrial detainee may bring a substantive due process claim for "unconstitutional punishment" based on conditions of confinement that are "imposed with an expressed intent to punish" or "not reasonably related to a legitimate nonpunitive governmental objective." *Williamson v. Stirling*, 912 F.3d 154, 178 (4th Cir. 2018) (quoting *Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 251 (4th Cir. 2005)). However, West's claim is not that his placement in medical isolation and the particular restrictions imposed upon him while in that status constituted unconstitutional conditions of confinement for him or other detainees with COVID-19; rather he claims that the constitutional violation arises from the fact that he was detained at all when he had a legal right to be released.

The CDC Guidelines, which provide only "guiding principles" to administrators of correctional and detention facilities and are thus not legally binding in any way, have no bearing on the constitutionality of McDonough's actions. CDC Guidelines at 1, County Opp'n Mot. Summ. J. Ex. 2A, ECF No. 19-3. While the CDC Guidelines advise that detainees who are confirmed to have COVID-19 should be medically isolated, nowhere in the CDC Guidelines does

12

.

the CDC advise detention facilities to continue medical isolation of a detainee in contravention of a proper release order. Rather, the CDC Guidelines advise the opposite. They state that facilities should "[r]estrict cases from leaving the facility while under medical isolation precautions, unless released from custody," in which case the facility should "contact public health to arrange for safe transport and continuation of necessary medical care and medical isolation as part of release planning." *Id.* at 17. McDonough thus acted in contravention of the CDC Guidelines.

That West was not seriously injured physically is irrelevant. For a substantive due process claim based on overdetention, serious injury arises from "continued detention when the plaintiff was entitled to be released." *Alcocer*, 906 F.3d at 953; *see also West*, 496 F.3d at 1327 (analyzing the requirement of subjective knowledge of a risk of serious harm as requiring the plaintiff to show that the defendant "subjectively knew that her acts would lead to [the plaintiff's] over-detention").

Finally, to the extent that the County argues that the overdetention was justified by the COVID-19 pandemic and thus does not constitute "egregious, arbitrary governmental conduct" that "shocks the conscience," *Young*, 238 F.3d at 574, the fact that medical isolation may have been good for West or the community does not justify overdetention. "Once the basis for [a] person's continued incarceration is gone, the . . . authority to simply continue holding them in prison—even to promote [the government's] own sense of what's good from them—is gone as well." *Barnes v. District of Columbia*, 793 F. Supp. 2d 260, 278 (D.D.C. 2011) (holding that a policy of refusing to discharge inmates on their release dates if necessary administrative tasks were not completed by 10:00 p.m. that night was "shocking," "interfered with the fundamental liberty interests" of plaintiffs, and violated substantive due process). Significantly, McDonough's actions were not limited to holding West for a few additional hours, or even overnight, in order to find a place for him to go where he could quarantine. The overdetention lasted a full 13 days, during

which McDonough apparently stopped seeking a way to release West to quarantine elsewhere and made no effort to seek legal authority to extend West's detention under whatever argument relating to public health and the COVID-19 pandemic she could formulate. Rather, she took it upon herself to make a decision that only a judicial officer may make—the decision to deprive a person of liberty by confining him to a jail. Under these circumstances, the Court finds that McDonough violated the substantive due process rights guaranteed to West under the Fourteenth Amendment.

### B.    Procedural Due Process

These same facts also demonstrate that even if the County had not deprived West of his substantive due process rights, it still deprived West of his right to procedural due process, in violation of the Fourteenth Amendment. Determining whether a plaintiff's procedural due process rights have been violated is a two-step process. First, the court "asks whether there exists a liberty or property interest which has been interfered with by the State." *Henderson v. Simms*, 223 F.3d 267, 274 (4th Cir. 2000) (quoting *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989)). Second, the court "examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Id.* At the first step, as discussed above, West had a liberty interest in being free from detention after he had been ordered released. *See Foucha*, 504 U.S. at 80. As a result, he was entitled to procedural protections before the deprivation of liberty.

At the second step, West argues that he was entitled to at least "notice and a hearing" before he was deprived of his liberty. West Mot. Summ. J. at 9, ECF No. 18-1; *see D.B. v. Cardall*, 826 F.3d 721, 741 (4th Cir. 2016). As noted by West, even under the circumstances of health emergencies, Maryland law provides that if the State requires an individual believed to have been exposed to a deadly pathogen "to go to and remain in places of isolation or quarantine," it must

provide written notice of that requirement and an opportunity for a hearing within three days to contest the isolation. Md. Code Ann., Health-Gen. §§ 18-905(a)(1)(ii), 18-906(a)-(b) (LexisNexis 2019). The Court does not need to determine what exact process the County should have engaged in here because the record reflects that no process was provided at all, and the County does not claim otherwise. Instead, the County asserts that it did not plan in advance to detain West past his release date, and that West was not denied "his right to be heard" because his public defender attorney filed a Petition for a Writ of Habeas Corpus on April 14, 2020, 11 days into the overdetention period. County Reply at 9; *see also* JSUF ¶ 23. The County's intentions and the acts of West's own attorney to object to the overdetention do not save the County from being required to provide proper procedural protections before depriving West of his physical liberty. *See Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470, 1473, 1477 (9th Cir. 1992) (holding that a jail system's lack of "internal procedures for keeping track of whether inmates had received an arraignment or attended other scheduled court appearances" and reliance on "inmates, attorneys, family members, court personnel, and members of the jail staff . . . to bring to the system's attention missed arraignments or court appearances," which resulted in the plaintiff's prolonged pre-arraignment detention, violated the Fourteenth Amendment). Where some measure of process was due and the record reflects that the County provided West with none, the County has also violated West's procedural due process rights under the Fourteenth Amendment.

### C.     Fourth Amendment

Finally, because the Court has already found that West's overdetention violated his Fourteenth Amendment substantive and procedural due process rights, the Court need not address West's Fourth Amendment argument or the County's claims relating to the special needs exception and administrative searches, which are doctrines applicable to a Fourth Amendment claim.

## CONCLUSION

For the foregoing reasons, West's Motion for Partial Summary Judgment will be GRANTED. The County's Cross Motion for Summary Judgment will be DENIED. A separate Order shall issue.

Date:   January 13, 2022

THEODORE D. CHUANG
United States District Judge